Leslie WILKENSON, Plaintiff–Appellee,

Eugene Easterday and Timothy C. Hinten, Intervenors–Appellees,

v.

HERCULES ENGINES, INC., Defendant–Appellee,

v.

John J. LENNON, Appellant.

No. 97–3152.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1998.

Decided March 10, 1998.

Salvatore J. Falletta (argued and briefed), Green, Haines, Sgambati, Murphy & Macala Company, Canton, OH, for Intervenors–Appellees.

Bruce G. Hearey (briefed), Dianne F. Hearey (argued), Wally Martin Mueller (briefed), Spieth, Bell, McCurdy & Newell Co., Cleveland, OH, for Defendant–Appellee.

Patrick Joseph Cooney, III (argued and briefed), Paul C. Morrison (briefed), Morrison & Laino, Cleveland, OH, for Appellant.

Before: MERRITT, KENNEDY, and BOGGS, Circuit Judges.

**OPINION**

BOGGS, Circuit Judge.

Appellant John Lennon challenges the district court's approval of a class action settlement. Under our decision in *Shults v. Champion Int'l Corp.*, 35 F.3d 1056 (6th Cir.1994), Lennon has no standing to bring this appeal, as he did not intervene below. He also does not qualify for the application of any of *Shults*'s exceptions. Therefore, we dismiss the appeal and affirm the district court's approval of the settlement.

**I**

**A**

Hercules Engines, Inc. (HEI) once operated a military and commercial engine assembly plant in Canton, Ohio. In November 1992, it was bought out by another company and ceased operations. It did, however, maintain two pension plans. One was for hourly employees (the hourly plan) and the other was for salaried employees (the salaried plan).

In 1993, a group of former hourly HEI employees filed a class action suit against HEI under ERISA, 29 U.S.C. § 1001 *et seq.*, alleging, among other things, violations of benefits agreements. In October, Timothy Hinten intervened and moved to add a class of former salaried HEI employees. In September 1994, the magistrate judge conditionally certified three classes of plaintiffs. Two of the classes were made up of hourly employees. The third class consisted of salaried employees.

The district court approved the certification of the hourly classes, but was silent as to the salaried class. The hourly classes' case proceeded, and was settled in 1995. The hourly classes are no longer involved in this case, and their named representative, Leslie Wilkenson, is only a nominal plaintiff. In February 1996, after the magistrate judge recommended a broader definition of the salaried class, the district court certified that class.

**B**

John Lennon began working for White Engines, Inc., a predecessor corporation to

HEI, in 1977. He later became the company's CEO. Lennon was vested in his accrued benefits when, in 1987, HEI bought out White Engines. HEI took over the White Engines pension plan, making Lennon vested in the new HEI plan. Contemporaneously, Lennon stopped work, and withdrew his individual contributions (over $100,000) from the salaried plan.

In June 1995 (during the pendency of the lawsuit but before the salaried class was formally certified) Lennon got a letter from the actuary of the salaried plan. The letter informed Lennon that his monthly pension benefit had been calculated at $4,255.35 (Lennon had not begun receiving his pension because he had not yet turned 65). Although it nowhere mentioned the class action, the letter was motivated by negotiations in the lawsuit.

In July, Lennon sent a response stating that he thought he was entitled to $6,200 per month. Lennon now claims that the original $4,255.35 figure was about right, but his decision to contest the amount had been made. The HEI pension committee responded to Lennon in March 1996 (the salaried class having been certified in the meantime) that his pension should actually be only $2,780.50 per month. It explained its earlier error as resulting from the failure to subtract the effect of Lennon's $100,000 withdrawal. The remaining discrepancy between the committee's figures and Lennon's stemmed from a difference in their respective definitions of Lennon's base salary as opposed to his bonuses, and from Lennon's disputation concerning the time value of his money.

Pursuant to ERISA, Lennon requested a review hearing before the committee in May. Significantly, a letter to Lennon's lawyer in July mentioned the pending lawsuit, and notified Lennon that if he persisted in the appeal of his benefit calculation but was unsuccessful, his base salary figures would be made part of the settlement agreement reviewed by the court and distributed to the salaried plan members. Lennon thus had notice of the lawsuit at least as early as July 1996.

In August, Lennon's lawyer sent a final letter to the committee, outlining Lennon's objections to the committee's calculation of his pension. The Committee rejected Lennon's arguments, notified him that he would receive $2,780.50 per month, and stated that this figure would be reflected in the settlement agreement.

### C

Discussions in open court among the magistrate judge, HEI, and the salaried class, had taken account of Lennon's predicament as early as January 1996, a month before the class was formally certified. Lennon's dispute came up again in discussions in May, with emphasis on the need to account for Lennon in the settlement so as to avoid a separate lawsuit—Lennon still had the ability to file a civil action under ERISA, 29 U.S.C. § 1132(a)(1)(B), to appeal the committee's decision on the amount of his pension. At a settlement conference in September, after Lennon's claim had been finally rejected by the committee, counsel for HEI stated that Lennon would have some sort of "forum" to pursue his appeal through the class action, rather than through a separate civil lawsuit.

HEI and the salaried-class representative entered into a settlement agreement in October 1996. Included in the agreement was a line item stating that Lennon's monthly benefit would be $2,780.50. As suggested above, this language was apparently included to ensure that Lennon would contest the amount through the fairness hearing rather than through a separate action.

The district court scheduled a fairness hearing for December 18, and sent notification to the class members, including Lennon. Lennon filed a notice on December 4 that he would object to the settlement. He gave the same two reasons as before: disputes over base salary/bonus distinctions, and over present-value calculations. The district court held a status conference regarding Lennon's claims, and all sides—Lennon, HEI, and the class representative—filed pre-hearing briefs. Lennon's brief raised new claims, under ERISA and FED.R.CIV.P. 23. It also repeated his old arguments about his pension, but it did not include any documentary

evidence to support them; the attached affidavit only covered his new arguments.

At the fairness hearing, Lennon's counsel argued his cause. The district court offered to allow Lennon to testify (having previously thought that there would not be enough time) regarding his mathematical disputes, but Lennon was not prepared to do so. As a result, the district court gave him five days to file a post-hearing affidavit to support his claims. Lennon did so, with extensive exhibits, but claimed cryptically that some of his evidence required oral testimony and so could not be presented adequately. On December 30, counsel for the class and HEI submitted briefs in opposition.

The next day, the district court rejected Lennon's objections and approved the proposed settlement. Lennon filed this timely appeal.

## II

■ On appeal, Lennon reiterates his Rule 23 and ERISA claims. These matters are irrelevant, however, because under our clear precedent Lennon has no standing to bring this appeal.

■ In *Shults v. Champion Int'l Corp.*, 35 F.3d 1056 (6th Cir.1994), we held that non-named members of a class do not have standing to appeal a class-settlement order. There are limited exceptions: would-be appellants who have intervened, who have tried to intervene, or who have been "summoned" into court below. *Id.* at 1061. None of these exceptions apply to Lennon.

*Shults* was decided well before the events in this case. Nevertheless, Lennon did not intervene or try to, despite his unique interest in the settlement; he receives the largest pension in the salaried class. Notably, the second largest pension goes to Eugene Easterday, who did intervene.

Neither was Lennon "summoned" into court. In *Shults*, the paradigmatic example of being summoned into court came from *Cohen v. Young*, 127 F.2d 721 (6th Cir.1942). In *Cohen*, the appellant had received an order to show cause why the settlement should not be approved. *Id.* at 724. Cohen had no choice but to participate in the proceedings.

■ By contrast, Lennon received no such summons. Lennon argues that he was figuratively "summoned" into court and "compelled" to appear in that if he did not, it would have prejudiced any subsequent ERISA claim by him against HEI (presumably through some form of estoppel, though Lennon has not made this clear). But *Shults* does not evaluate how badly the party wants to appear in court; rather it looks to the role the court plays in the party's appearance. It is only when the court affirmatively orders a non-named party to appear that the party has standing to appeal. Lennon pushed his way into court; he was not pulled there. Therefore, he does not qualify for this exception in *Shults*.

Another reason that Lennon's intense interest in the proceedings cannot support an exception to *Shults* is that such an exception would swallow the rule. Indeed, similar claims of unique interest could be made by virtually any member of a class who is motivated enough to attempt an appeal. To the extent that we give any weight to Lennon's disproportionate interest in the proceedings below, it is in noting that this interest reinforces the conclusion that intervention was Lennon's proper course.

■ Lennon also claims that his notice was inadequate. Initially, this may appear to be grounds for another exception to *Shults*. After all, the only party likely to appeal who should not be expected to have intervened is one who lacked notice. That, however, is the other paradigmatic case in *Shults*, and the only exception for such appellants is when they lack notice and intervene after a settlement order is entered. *Id.* at 1060 (discussing *Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Counties Carpenters Dist. Council*, 459 F.2d 579, 582 (6th Cir.1972)). Thus, under *Shults*, even appellants claiming lack of notice have to intervene. Denying Lennon the benefit of this exception follows *a fortiori*, since his notice, however deficient, was adequate to inform him and lead him to intervene if he saw fit.

To summarize, if Lennon was unhappy with the notice he had received; if he wanted

to attempt to obtain more money for himself in the settlement; and if he wanted to be able to appeal the approval of the settlement, he could have and should have intervened.

### III

We therefore dismiss Lennon's appeal and AFFIRM the district court's approval of the settlement of the class action.